_____

MARCUS TELESFORD,

                                  Plaintiff,          DECISION and ORDER

-vs-

                                             16-CV-6130 CJS

SUPERINTENDENT STEPHEN
WENDERLICH, et al.,

                                  Defendants.

_____

## INTRODUCTION

This is an action by prison inmate Marcus Telesford ("Telesford" or "Plaintiff"), proceeding *pro se*, alleging pursuant to 42 U.S.C. § 1983 that Defendants violated his Eighth Amendment Right to be free from cruel and unusual punishment.   Now before the Court is Defendants' pre-discovery motion (Docket No. [#18]) for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56.   The application is granted in part and denied in part.

## FACTUAL BACKGROUND

For purposes of this Decision and Order only, the following are the undisputed facts as viewed in the light most-favorable to Plaintiff, the non-moving party.   At all relevant times Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and Defendants were employed by DOCCS at Southport Correctional Facility ("Southport").   Southport is a Special Housing Unit ("SHU") facility where inmates serve disciplinary sentences.

In October 2014, Plaintiff was transferred to Southport to serve a disciplinary sentence. Shortly thereafter, Plaintiff walked past defendant Corrections Officer Tillinghast ("Tillinghast"),

(incorrectly identified as "Tillyhanst" and "Tillyhast" in Plaintiff's submissions)[1] who was familiar with Plaintiff from having worked in a different correctional facility where Plaintiff had been housed. According to Plaintiff, Tillinghast had previously harassed him and filed false misbehavior reports against him. Upon seeing Plaintiff at Southport, Tillinghast asked him why he was there, but Plaintiff refused to answer. Tillinghast then stated, "I see you haven't learned your lesson but trust me, I'm going to get you this time."[2]

Prior to November 11, 2014, Plaintiff received medical treatment at Southport for various ailments, including daily headaches (which he attributed to having been assaulted by corrections officers in May 2014),[3] "sharp low back pain,"[4] loss of hearing in his right ear,[5] "testicular hydroceles" (swelling),[6] and left elbow pain.

On November 11, 2014, Plaintiff was returning to his cell from recreation, when he was stopped by several corrections officers, including Tillinghast and defendant Corrections Sergeant Belz ("Belz"), who directed him to go into a shower for a strip search. Tillinghast claims that he decided to strip search Plaintiff after he conducted a pat frisk and felt "an unusual bulge in [Plaintiff's] buttocks area."[7] However, the Complaint denies that Tillinghast conducted a pat frisk or that he observed any contraband or bulge in Plaintiff's clothing. Plaintiff nevertheless complied with the officers' directions, went into the shower, removed his clothing and assumed the strip search position. Tillinghast and Corrections Officer Lamb ("Lamb"), though, began punching and kicking him in the "face, head, body area, back and ribs,"[8] and

---

[1] *See*, Docket No. [#18-3] at p. 44.
[2] Complaint [#1] at p. 5.
[3] Docket No. [#18-4] at p. 11.
[4] *Id.*
[5] *Id.*
[6] Docket No. [#18-4] at p. 10.
[7] Docket No. [#18-3] at p. 47.
[8] Complaint [#1] at p. 7.

Corrections Officer Harvey ("Harvey") began to choke him. Sergeant Belz stood by and observed the assault without intervening. Tillinghast then grabbed Plaintiff's buttocks, spread them apart and stated, "He doesn't have [anything] in between his [buttocks], he must [have]f stuff[ed] it up his rectum."[9] Plaintiff denies that he pushed anything into his rectum or did anything else to warrant the use of force.

Tillinghast subsequently filed a false misbehavior report accusing Plaintiff of having placed contraband in his rectum.[10] Additionally, Plaintiff was placed on "contraband watch," between November 11, 2014 and November 14, 2014. While on contraband watch, Plaintiff remained in an observation cell, without a toilet, clothes, bed linens or running water. When Plaintiff needed to use the toilet, he had to inform corrections staff, who would then take him to a cell with a toilet and observe him to see if he passed any contraband.

During the period that he was on contraband watch, Plaintiff told the corrections officers who were guarding him, (Officers Wilcox ("Wilcox"), Godfrey ("Godfrey"), Seyman ("Seyman"), Thrall ("Thrall"), Kitts ("Kitts"), Potter ("Potter"), Sabol ("Sabol"), Caporiccio ("Caporiccio") and Brink ("Brink"), that he needed medical attention, but they refused to relay his request to Southport's medical staff.

Nevertheless, Plaintiff acknowledges that he received his usual mental health medications from a nurse each day that he was on contraband watch. Additionally, Plaintiff's ambulatory health record ("AHR") indicates that on November 13, 2014, while he was still on contraband watch, he complained to a nurse about needing "something [for his] shoulder."[11]

---

[9] Docket No. [#18-3] at p. 15.
[10] Docket No. [#18-3] at p. 47 (Tillinghast's misbehavior report alleged that during the strip frisk, Plaintiff reached back and pushed something into his anus.)
[11] Docket No. [#18-4] at p. 9.

The nurse reported that Plaintiff had a "nicked size[d] abrasion" on his left shoulder, with no redness or sign of infection.[12]  The nurse advised Plaintiff to monitor the abrasion and keep the area around it clean.[13]

On November 14, 2014, Plaintiff was allowed to return to his usual cell, because he had defecated three times without passing any contraband.[14]  Defendant Corrections Sergeant Chapman ("Chapman") escorted Plaintiff back to his cell. During the escort, Plaintiff told Chapman that he had been assaulted and needed medical attention, but Chapman told him to "shut up," and warned him not to make a "sick call" request.

Plaintiff nevertheless made a sick call request that same day, and that evening (November 14, 2014) he was examined by Nurse M. Warr ("Warr").  Warr noted that Plaintiff was complaining about an assault by staff on November 11, 2014, in which he had been "kicked, punched [and] choked," and that he was having "chest pain, respiratory problems and headaches."[15]  Upon examination, Warr noted that Plaintiff had a scabbed abrasion on his left shoulder; subjective tenderness of his right-side ribs; and swollen testicles.[16]

On November 16, 2014, Plaintiff wrote an inmate grievance in which he complained about the assault and "sexual harassment" on November 11th, and the denial of medical attention between November 11th and November 14th.

On November 17, 2014, Plaintiff was placed back on contraband watch.  When Plaintiff asked why he was being placed on contraband watch for a second time, an unidentified corrections officer told him that it had been ordered by defendant Deputy Superintendent for

_____

[12] *Id.*
[13] *Id.*
[14] Complaint [#1] at pp. 8-9.
[15] Docket No. [#18-3] at p. 48.
[16] *Id.*

Security Fagan ("Fagan"), because Plaintiff had told medical staff that he had been assaulted, and he needed to learn to keep his mouth shut.

On November 18, 2014, Plaintiff was seen by Nurse Grant ("Grant"), who reported that he was complaining of burning sensation when urinating, loss of hearing in his right ear, migraine headaches and rib pain.[17] Plaintiff reportedly told Grant that he had been having such symptoms "since 11/11," but as previously noted, Plaintiff was already complaining of daily headaches and loss of hearing in his right ear prior to November 11th.

Plaintiff remained on this second contraband watch until November 21, 2014. During that period, Deputy Superintendent Wenderlich interviewed Plaintiff and asked him what had happened on November 11th. Plaintiff told Wenderlich that the officers had assaulted him, and that Tillinghast had filed a false misbehavior report. Wenderlich responded that Plaintiff was on contraband watch because he was a "complete asshole," and because he had filed a lawsuit against Wenderlich in 2005. Wenderlich subsequently dismissed Tillinghast's misbehavior report against Plaintiff.

Thereafter, Plaintiff falsely told mental health staff at Southport that he was suicidal, which resulted in him being transferred to Sullivan Correctional Facility ("Sullivan").

On December 3, 2014, Wenderlich denied Plaintiff's grievance.[18] In that regard, Wenderlich noted that an investigation had been conducted into Plaintiff's allegations, the results of which did not support Plaintiff's version of events.

Plaintiff then appealed to the DOCCS Central Office Review Committee ("CORC"). As part of CORC's investigation into the appeal, it had a corrections captain interview Plaintiff, who

---

[17] Docket No. [#18-4] at p. 7.
[18] Docket No. [#18-3] at p. 32.

by that time (April 22, 2015) was housed at Great Meadow Correctional Facility ("Great Meadow"). The corrections captain subsequently prepared a memo for CORC concerning the interview, which stated:

> Inmate Telesford 02A0506 was interviewed in regards to his Southport CF Grievance. He stated his grievance was complete as written and he had no new information to add to his complaint nor did he identify any witnesses.

Docket No. [#18-3] at p. 63. CORC eventually upheld Wenderlich's determination.[19]

Almost a year after the events at Southport, Plaintiff attempted to file a new grievance. Specifically, in or about November 2015, Plaintiff, who by that time was housed at Upstate Correctional Facility ("Upstate"), attempted to file a "late grievance" concerning

> the incident that took place on November 17, 2014 to November 21, 2014 [at Southport, in which] Deputy Superintendent of Security Fagan and Superintendent Stephen J. Wenderlich retaliate[ed] against the Plaintiff [by placing him] back on contraband watch after [he] was released from contraband watch on November 14, 2014 in retaliation [for him] reporting to mental health staff that he [had been] assaulted by correctional staff.

Docket No. [#21] at p. 5. In other words, Plaintiff attempted to file a grievance concerning the second, allegedly-retaliatory stint on contraband watch, which was not described in his original grievance. However, DOCCS did not accept the grievance, purportedly because it was submitted more than forty-five days after the alleged incident, in violation of DOCCS Directive 4040.[20] Indeed, as already noted, the grievance was approximately a year late. Plaintiff next

---

[19] Docket No. [#18-3] at p. 10.
[20] Docket No. [#21-1] at pp. 3 & 5. As part of his response to Defendants' summary judgment motion, Plaintiff has submitted what purports to be a copy of a letter that he sent to the Inmate Grievance Supervisor at Southport on November 8, 2015. (Docket No. [#21-1] at p. 14.). The letter purports to explain that Plaintiff was prevented from filing the grievance sooner because staff at Great Meadow had "thrown away [his] outgoing mail," suggesting that he was attempting to mail the grievance to Southport. However, Plaintiff now acknowledges that grievances must be filed at the facility at which an inmate is presently housed, even if they pertain to events that occurred at other facilities. *See*, Docket No. [#21-1] at p. 3. Consequently, Plaintiff did not need access to the U.S. mail in order to file a grievance.

attempted to file a complaint against Wenderlich and Fagan pursuant to New York Civil Service Law § 75.

On March 2, 2016, Plaintiff commenced this action, proceeding *pro se*. Liberally construing the Complaint, it purports to state claims under the Eighth Amendment, for physical assault, "sexual harassment," deliberate indifference to serious medical needs, conditions of confinement while on contraband watch[21] and retaliation.

On February 8, 2017, Defendants filed the subject motion [#18] for partial summary judgment, in lieu of answering the Complaint. Defendants indicate that they are seeking "dismissal of all claims other than [claims for] physical assault."[22] In that regard, Defendants categorize the alleged beating and choking as a "physical assault," while categorizing Tillinghast's alleged improper touching of Plaintiff's body during the two strip searches as "sexual harassment." Defendants' motion is based upon Plaintiff's alleged failure to exhaust administrative remedies before commencing this action, his alleged inability to sustain a claim for deliberate indifference to his medical needs, and his alleged failure to state an actionable claim for "sexual harassment."

With regard to Plaintiff's alleged failure to exhaust his administrative remedies, Defendants contend, for example, that the grievance which Plaintiff exhausted fails to mention anything that occurred after November 16, 2014, and that he therefore "failed to exhaust" as to any alleged violation that occurred after that date. With regard to the medical-deliberate-

---

[21] *See, Mitchell v. Chappius*, No. 6:17-CV-06673(MAT), 2018 WL 4095108, at *5 (W.D.N.Y. Aug. 27, 2018) ("The question of 'whether incarceration in the SHU violates the Eighth Amendment ... depends on the duration and conditions of the confinement.' *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015). To establish an Eighth Amendment violation, an inmate must show "(1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities', and (2) a 'sufficiently culpable state of mind' on the part of the defendant official such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer, 511 U.S. at 834)").

[22] Docket No. [#18-5] at p. 3.

indifference claim, Defendants contend that Plaintiff's AHR demonstrates that he was "properly treated," that he did not have a sufficiently serious injury, and that Defendants did not act with a sufficiently culpable state of mind.  With regard to the alleged failure to state a claim for "sexual harassment," Defendants argue that even if Tillinghast improperly grabbed Plaintiff's buttocks during a strip search, as alleged in the Complaint, that such fact is insufficient to sustain an Eighth Amendment claim.

On March 6, 2017 and March 8, 2017, Plaintiff filed, respectively, a Counter-Statement of Facts [#21] and a Memorandum of Law [#22].  Regarding his alleged failure to exhaust administrative remedies as to certain claims asserted in this action, Plaintiff notes that he attempted to file the "late" grievance at Upstate, a year after the events at issue in this action. Plaintiff vaguely suggests that he was prevented from filing the grievance sooner, either because he was receiving mental health treatment, or because unidentified staff at Great Meadow tampered with his mail.  Plaintiff further contends that he filed a separate complaint against Wenderlich and Fagan pursuant to New York Civil Service Law sec. 75.

Regarding medical treatment, Plaintiff maintains that his AHR does not correctly document what happened following the assault on November 11th.  Plaintiff admits that he was seen by facility mental health staff on November 12th, 13th and 14th to receive his usual medications, but contends that they ignored him when he attempted to tell them that he had been assaulted.[23]  As for the injuries that he allegedly sustained during the assault, Plaintiff describes "scars," "swollen face," a "nickel sized abrasion" on his left shoulder, sore testicles, burning sensation when urinating, mental trauma, "severe sharp back pains" and "migraine

---

[23]  Docket No. [#21] at p. 3.

headaches . . . from being repeatedly punched."[24]   Although, as already noted, the AHR indicates that Plaintiff was already being treated for headaches, back pain and testicular swelling prior to the alleged assault.

Regarding his alleged failure to state an actionable claim for "sexual harassment" against Tillinghast, Plaintiff contends that he has adequately asserted a claim based upon Tillinghast's conduct during the strip search on November 11th , since Tillinghast had "no penological reason" to conduct the search.

On March 10, 2017, Defendants filed a reply [#23].   Regarding exhaustion of administrative remedies, Defendants contend that Plaintiff's response lacks merit and is misleading, since during the period between November 2014 and November 2015, he filed and exhausted sixteen various grievances pertaining to other matters, which shows that nothing was preventing him from filing his "late" grievance sooner.

On March 23, 2017, with the Court's permission, Plaintiff filed a sur-reply.[25]   The submission vaguely reiterates that various factors prevented Plaintiff from filing his "late" grievance sooner, but does not address why those same factors did not prevent him from filing and exhausting sixteen other grievances during the same period.   As for his physical injuries, Plaintiff now admits that it is "undisputed" that he had preexisting medical conditions (migraine headaches, loss of hearing in right ear, back pain, painful urination), which he sustained during an unrelated assault in May 2014.   Nevertheless, he contends that the alleged assault on November 11, 2014, exacerbated those preexisting injuries.

---

[24] *See, e.g.*, Docket No. [#21] at pp. 3-4.
[25] *See*, Order [#25] treating Plaintiff's submission [#24] as a sur-reply.

Preliminarily, the Court reiterates that Defendants are not seeking summary judgment on Plaintiff's claims against Tillinghast, Lamb, Harvey and Belz relating to the alleged beating/choking on November 11, 2014.

<u>Plaintiff's *Pro Se* Status</u>

Plaintiff is proceeding *pro se*, and the Court therefore reviews his papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

<u>Rule 56</u>

Defendants have moved for partial summary judgment pursuant to Fed. R. Civ. P. 56.[26] Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (*citing Celotex Corp. v. Catrett*, 477

---

[26] Defendants served an *Irby* notice on the *pro se* Plaintiff as required by Local Rule 56.2. *See*, Docket No. [#18-2].

U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.   The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Exhaustion of Administrative Remedies

A prison inmate is required to exhaust his administrative remedies before bringing an action in federal court complaining about prison conditions. *See*, 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

For purposes of 42 U.S.C. § 1997e(a), New York inmates in the custody of DOCCS are required to pursue their administrative grievances using New York's Inmate Grievance Program:

> As an inmate of the New York State Department of Corrections and Community Supervision ("DOCCS"), Plaintiff was required to submit his grievances through the New York DOCCS' Inmate Grievance Program ("IGP"). The IGP has a three-tiered process for adjudicating complaints: "(1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ('IGRC'), (2) the prisoner may appeal an adverse decision by the

IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ('CORC')." *Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir.2009) (citing 7 N.Y. Comp.Codes R. & Regs. § 701.7 (1999)).

*Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. Feb. 1, 2015).

To satisfy the requirements of 42 U.S.C. § 1997e(a), a grievance must adequately describe the nature of the inmate's problem.   In this regard, the Second Circuit has stated:

> The exhaustion requirement of the Prison Litigation Reform Act ("PLRA") affords "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir.2006) (internal quotation marks omitted). Consistent with this purpose, a prisoner must allege facts sufficient to alert corrections officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir.2004) (internal quotation marks omitted). The burden is not a heavy one; it can be analogized to notice pleading. *See id.*

*Singh v. Lynch*, 2012 WL 386416, 460 F. App'x 45, 46–47 (2d Cir. Feb. 8, 2012); *see also, Dailey v. Fuller*, No. 915CV01051BKSTWD, 2016 WL 7732236, at *8 (N.D.N.Y. Dec. 5, 2016) ("Although it is appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally.") (citation omitted), report and recommendation adopted, No. 915CV1051BKSTWD, 2017 WL 108056 (N.D.N.Y. Jan. 11, 2017).

Where an inmate's pleading asserts claims based upon events that occurred *after* the inmate filed his administrative grievance, the Court must consider whether the earlier grievance satisfies the exhaustion requirement of § 1997e(a), or whether the inmate should have filed another grievance.   Briefly, the inmate is required to separately grieve the later-occurring incidents, unless they involve the "same problem" as to which the inmate previously exhausted

his administrative remedies. *Johnson v. Killian*, 680 F.3d 234, 238-239 (2d Cir. 2012).

> Where "a prior [properly exhausted] grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit," *Johnson*, 680 F.3d at 239, the prior grievance is sufficient to exhaust a prisoner's administrative remedies with respect to continuing violations at the facility. *Id.* at 238–39. However, "generalized complaints regarding the conditions of an inmate's confinement will [not] suffice to shortcut the administrative remedy process." *Id.* at 239.

*Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192 SJF SIL, 2014 WL 4185195, at *27 (E.D.N.Y. Aug. 20, 2014); *see also, White v. Velie*, No. 9:15-CV-88 (TJM/ATB), 2015 WL 10567827, at *7 (N.D.N.Y. Dec. 18, 2015) ("*Johnson* is distinguishable from this action. In *Johnson*, the plaintiff had already exhausted his remedies regarding the same policy, and the substantive issues would have been the same. This action involves a specific instance of alleged excessive force by defendant Velie and specific instances of the alleged denial of medical care which plaintiff did not exhaust. The fact that plaintiff has previously raised excessive force or medical care claims does not excuse him from exhausting all future claims based on medical care or excessive force."), report and recommendation adopted, No. 9:15-CV-88 (TJM/ATB), 2016 WL 1238242 (N.D.N.Y. Mar. 28, 2016).

Of course, an inmate's duty to exhaust administrative remedies under § 1997e(a) may be excused in certain cases:

> Though exhaustion is generally mandatory, we have explained that a failure to exhaust administrative remedies may be excused where: (1) the administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) "special circumstances ... justify the prisoner's failure to comply with administrative procedural requirements." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004) (internal quotation marks omitted).

*Dabney v. Pegano*, 2015 WL 664562 at *1.

However, an inmate who fails to utilize administrative remedies as to a particular claim

cannot create a triable issue of fact as whether exceptions (1) or (3) above apply merely by making vague assertions, particularly where he utilized administrative remedies to exhaust *other* claims during the same period. *See*, *Engles v. Dougherty*, No. 914CV1185TJMATB, 2017 WL 6466309, at *5 (N.D.N.Y. Aug. 22, 2017) ("Defendants have shown that there is no record of plaintiff appealing a grievance regarding the October 6, 2011 incident to the CORC, notwithstanding *three other grievances that were filed close to the same time period and appealed at every administrative level*. Plaintiff's statement that he filed a 'separate grievance,' but it was somehow lost or destroyed, is not supported by anything but inconsistent assertions. . . . [I]t defies logic to hold that administrative remedies were not "available" to plaintiff, given the evidence in the record."), report and recommendation adopted sub nom. *Engles v. Souza*, No. 914CV1185TJMATB, 2017 WL 6463074 (N.D.N.Y. Dec. 18, 2017); *see also*, *Toliver v. Stefinik*, No. 912CV00077MADATB, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016) ("Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint.").

As already mentioned, in the instant case the Complaint purports to assert Eighth Amendment claims for physical assault, "sexual harassment," deliberate indifference to serious medical needs, conditions of confinement while on contraband watch [27] and retaliation.

---

[27] *See, Mitchell v. Chappius*, No. 6:17-CV-06673(MAT), 2018 WL 4095108, at *5 (W.D.N.Y. Aug. 27, 2018) ("The question of 'whether incarceration in the SHU violates the Eighth Amendment ... depends on the duration and conditions of the confinement.' *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015). To establish an Eighth Amendment violation, an inmate must show "(1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities', and (2) a 'sufficiently culpable state of mind' on the part of the defendant official such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer, 511 U.S. at 834)").

However, Plaintiff did not exhaust his administrative remedies as to the conditions-of-confinement claim or retaliation claim before commencing this action. In particular, Plaintiff's six-page handwritten grievance[28] describes only the assault and "sexual harassment" on November 11th and the denial of medical attention between November 11th and November 14 by officers assigned to watch the contraband observation cell. The grievance does not allude to any improper conditions of confinement during the contraband watch, except the denial of medical treatment. Neither does the grievance allude to the alleged denial of medical treatment by Chapman, or the alleged retaliation by Fagan and Wenderlich (consisting of placing Plaintiff on contraband watch for a second time). The conditions of confinement in the contraband-watch cell, the alleged denial of medical treatment by Chapman and the alleged retaliation by Fagan and Wenderlich, are not the "same problem" which Plaintiff included in the grievance that he wrote on November 16, 2014. Accordingly, and as Plaintiff later recognized, he needed to file a separate grievance concerning those matters.

Plaintiff argues that his failure to exhaust (using the inmate grievance system) those claims which were not included in his grievance should be excused, either because he was receiving mental health treatment, or because prison staff at Great Meadow prevented him from filing a supplemental grievance by tampering with his outgoing mail. However, Plaintiff's vague assertions in that regard are insufficient to create a triable issue of fact, particularly where, as here, it is undisputed that Plaintiff filed and exhausted a large number of *other* grievances during the same period. It is also undisputed that in April 2015, at Great Meadow, a Corrections Captain interviewed Plaintiff concerning his November 2014 grievance, and Plaintiff stated that the "grievance was complete as written and he had no new information to

---

[28] Docket No. [#18-3] at pp. 23-28 (Grievance SPT-59452-14).

add to his complaint."[29]   Accordingly, Plaintiff's contention that remedies were unavailable or that he was prevented from using them are disproven by the record, and are therefore insufficient to defeat summary judgment as to the unexhausted claims.

Plaintiff nevertheless argues that he should be deemed to have exhausted his administrative remedies (at least with regard to the retaliation claims) by virtue of having filed a complaint against Wenderlich and Fagan pursuant to New York Civil Service Law § 75.[30] However, such act is insufficient to satisfy 42 U.S.C. § 1997e(a), for several reasons.   First, New York Civil Service Law § 75 is a labor provision that has nothing to do with Plaintiff's claims, and provides no right to inmates to complain about DOCCS employees.[31]   Indeed, this Court has previously rejected attempts by inmates to use Civil Service Law § 75 to exhaust administrative remedies. *See, Tapp v. Kitchen*, No. 02-CV-6658 CJS, 2004 WL 2403827 (W.D.N.Y. Oct. 26, 2004) (filing complaint under Civil Service Law sec. 75 was not sufficient to satisfy 42 U.S.C. § 1997e(a)); *accord*, *Rodriguez v. Skubis*, 2009 WL 1158785 at *5-6 (W.D.N.Y. Apr. 28, 2009).   Further, Plaintiff cannot claim that he was unaware of the need to use the DOCCS IGP procedures, rather than the Civil Service Law, to exhaust his administrative remedies as to the matters at issue in this lawsuit.   Rather, Plaintiff only filed the Civil Service Law § 75 complaint after he was told that the "late" inmate grievance that he was attempting to file in November 2015 was time-barred under the IGP rules.[32]

---

[29]  Docket No. [#18-3] at p. 63.
[30]  Docket No. [#21-1] at p. 16.   This Civil Service Law complaint was filed on December 3, 2015, more than a year after the matters complained of therein. *Id.*
[31]  *See, Ortlieb v. Lewis Cty. Sheriff's Dep't*, 155 A.D.3d 1628, 1629–30, 65 N.Y.S.3d 390, 391 (N.Y. App. Div. 2017) ("Civil Service Law § 75 provides that a public employer may not terminate or otherwise discipline certain public employees "except for incompetency or misconduct shown after a hearing upon stated charges.") (citation omitted).
[32]This Civil Service Law complaint was filed on December 3, 2015, more than a year after the matters complained of therein. Docket No. [#21-1] at p. 16.

For all of the foregoing reasons, Plaintiff failed to exhaust his administrative remedies as to the alleged conditions of confinement in the contraband-watch cell, the alleged denial of medical care by Chapman and the alleged retaliation by Fagan and Wenderlich. Accordingly, Defendants are granted summary judgment on those claims.

<u>Section 1983</u>

Defendants further contend that Plaintiff cannot establish Eighth Amendment claims, for either deliberate indifference to serious medical need or sexual abuse, under Section 1983. The Court agrees as to the medical claim, but disagrees as to the sexual abuse claim.

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

Here, Plaintiff contends that Defendants violated his Eighth Amendment rights, and the applicable law is clear:

> The Eighth Amendment protects prison inmates against cruel and unusual punishment. U.S. Const. amend. VIII; *see Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (protecting inmates against the "unnecessary and wanton infliction of pain") (internal quotation marks omitted). To be actionable, the punishment must be "objectively, sufficiently serious," and the corrections officer must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation and internal quotation marks omitted).

*Delee v. Hannigan*, 729 F. App'x 25, 29 (2d Cir. Mar. 28, 2018).

Plaintiff maintains that Defendants violated his Eighth Amendment rights by committing

sexual abuse against him during a strip search, and by denying him medical attention while he was confined in the contraband-watch cell.   With regard to the first type of claim,

> [s]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). A single incident can reach constitutional significance "if sufficiently severe or serious." *Crawford*[*v. Cuomo*], 796 F.3d [252,] 257 [(2d Cir. 2015)]. "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Id.* At the same time, there are "searches of an intensely personal nature" that are not "properly the subject of a lawsuit." *Id.* at 258.   "[T]he principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-5.

*Delee v. Hannigan*, 729 F. App'x at 29.

In the instant case, Defendants contend that they are entitled to summary judgment on the sexual abuse claim, because such claims are generally not actionable if they arise from "a single strip search," and because "even assuming the conduct alleged occurred – which Defendants deny – the act alleged [grabbing and spreading Plaintiff's buttocks] does not rise to the level of an Eighth Amendment violation."[33]   Defendants further contend that

> Plaintiff makes no allegation [that] the strip search was for an improper purpose, other than conclusorily stat[ing] he was sexually harassed by it, and concedes the stated purpose of the officer's alleged actions – which Defendants deny – was to find contraband.

Def. Memo of Law [#18-5] at p. 9.

However, Defendants' characterization of Plaintiff's claim is inaccurate and misleading, since Plaintiff obviously contends that "the stated purpose of the officers' actions" was false,

---

[33]  Def. Memo of Law [#18-5] at p. 8.

and that the strip search was indeed conducted for an improper purpose. The Complaint expressly asserts that Tillinghast had a history of "blatantly harass[ing] the plaintiff for no apparent reason" at other facilities, and that he had promised to "get" Plaintiff while he was at Southport.[34] Further, the Complaint describes Tillinghast's version of events as "lies."[35] For example, the Complaint alleges that on November 11th, Tillinghast, Belz and other officers were already gathered and waiting for Plaintiff upon his return from recreation, and that they ordered him into the shower for a strip search without performing any pat frisk and without having any basis to believe that he had contraband.[36] Meanwhile, Tillinghast's misbehavior report asserts that he conducted the strip search only after he conducted a pat frisk and "felt an unusual bulge in [Plaintiff's] buttocks area."[37] In sum, there is a triable issue of fact as to whether the strip search served a valid penological purpose or whether it was undertaken with the intent to harass and humiliate Plaintiff.[38]

To the extent that Defendants are arguing that the strip search (as described by Plaintiff) was not objectively "sufficiently severe or serious" to establish an Eighth Amendment violation regardless of Tillinghast's subjective motivation, the Court again disagrees. Defendants imply that a "single strip search" cannot establish an Eighth Amendment claim. However, the cases cited by Defendants merely indicate that claims arising from strip searches typically fail to rise to the level of an Eighth Amendment violation, *provided that they serve a valid penological*

---

[34] Complaint [#1] at pp. 5.
[35] Complaint [#1] at p. 11.
[36] Complaint [#1] at pp. 5.
[37] Docket No. [#18-3] at p. 56.
[38] There also seems to be a disagreement as to whether Plaintiff actually had contraband secreted in his body – Belz asserted that an x-ray showed that Plaintiff had such contraband, but no contraband was actually found, even though Plaintiff was on contraband watch for six days. Docket No. [#18-3] at pp. 24, 37, 47, 74-75. Moreover, although the AHR indicates that "security" requested an x-ray to check for contraband, it does not indicate that such an x-ray was actually performed. Docket No. [#18-4] at p. 10.

*purpose.*[39]   Again, Plaintiff clearly alleges that the strip search on November 11, 2014, had *no* valid penological purpose.   Moreover, Second Circuit caselaw indicates that an Eighth Amendment sexual abuse claim arising from a single strip search may be actionable, provided that the search involved "intentional contact with an inmate's genitalia or other intimate area" without valid penological purpose. *See, Shannon v. Venettozzi*, No. 17-2092, 2018 WL 4224321, at *2 (2d Cir. Sept. 6, 2018) ("[T]he Eighth Amendment is violated by even a single instance of a corrections officer's intentional contact with an inmate's genitalia or other intimate area when such contact serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate.") (citation and internal quotation marks omitted).   Consequently, Defendants' request for partial summary judgment on the Eighth Amendment sexual abuse claim is denied.

However, the Court agrees with Defendants that Plaintiff's Eighth Amendment medical claim fails.   Briefly summarized, the applicable legal principles are well settled:

> To prevail on a claim for deliberate indifference to his serious medical needs under the Eighth Amendment, a plaintiff must prove that, (1) objectively, the alleged deprivation of medical care was "sufficiently serious," and, (2) subjectively, the defendants acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). Mere negligence will not suffice. *Id.* at 280.   Additionally, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

*Tolliver v. Sidorowicz*, 714 F. App'x 73, 73–74 (2d Cir. Mar. 8, 2018).

In responding to Defendants' arguments regarding the lack of a serious injury, Plaintiff cites medical problems such as headaches, back pain and testicular swelling, for which he was

---

[39]  Docket No. [#18-5] at pp. 8-9.

already being treated prior to the assault, as well as facial swelling, sore ribs and a small abrasion on his shoulder. These types of minor injuries are not sufficiently serious to support an Eighth Amendment medical claim. *See, e.g., McDay v. Bushey*, No. 914CV997GLSATB, 2016 WL 6638182, at *6 (N.D.N.Y. Aug. 10, 2016) (Where inmate alleged that he suffered "(1) a bruise at the top of his head, (2) an abrasion to the right lateral head, (3) scratches to his right upper back, (4) a scratch to his left lower back, (5) a swollen lip, (6) a "skin nick" on his left knee, (7) a swollen left pinky finger, (8) a skin tear between the third and fourth finger on his left hand, and (9) an approximately ten inch scratch to his right forearm," the district court held that "[t]hese types of minor, temporary injuries have been held not to constitute serious medical needs as a matter of law.") (collecting cases), report and recommendation adopted, No. 914CV997GLSATB, 2016 WL 6637969 (N.D.N.Y. Nov. 9, 2016); *see also, Jackson v. Kaufman*, No. 13 CIV. 6544 PAC DF, 2015 WL 5521432, at *9–10 (S.D.N.Y. Sept. 18, 2015) ("[W]hile the medical records may suggest that, at most, Plaintiff suffered from mild swelling and bruising, Plaintiff himself testified under oath, at his deposition, that he suffered from severe bruising and swelling, accompanied by significant pain, rendering him "barely able to walk" for nearly a month. At the summary judgment stage, Plaintiff is entitled to have the Court draw every favorable inference from this testimony. Nonetheless, even absent the medical records, and even if Plaintiff s testimony were fully credited by a jury, Bentivegna is correct that this would likely be inadequate, as a matter of law, to show that Plaintiff's injury was "sufficiently serious" for the alleged denial of treatment to constitute a potential Eighth Amendment violation. Even if his leg showed substantial bruising and swelling, Plaintiff still appears to claim a soft-tissue injury, and analogous case law regarding similar injuries shows that, even when fairly significant, such injuries are generally not considered to create a condition of urgency or pain

sufficient to render a lack of treatment constitutionally suspect.").

Additionally, even assuming *arguendo* that Plaintiff's injuries were sufficiently serious to support the objective prong of an Eighth Amendment medical claim, his own submissions undercut his claim that Wilcox, Godfrey, Seyman, Thrall, Kitts, Potter, Sabol, Caporiccio or Brink had the requisite state of mind to deny him medical attention by refusing to relay his request to Southport's medical staff.   In this regard, Plaintiff admits that he was actually seen by Southport medical staff each day that he was on contraband watch, and that he complained to them about the injuries that he allegedly sustained during the assault on November 11, 2014. *See*, Plaintiff's Counter-statement of Facts, Docket No. [#21] at p. 3 ("He was seen by medical and mental health staff on November 12, 13 & 14 to receive his medication, but when the Plaintiff attempted to bring to their attention that he was assaulted and in need of medical attention he was ignored and denied medical treatment.").   Although Plaintiff alleges that the medical staff ignored his complaints, the corrections officers monitoring him while he was in the observation cell were entitled to rely upon the expertise of the medical staff.   The corrections officers were not required to summon other medical providers simply because Plaintiff was dissatisfied with the level of treatment that he was receiving. *See, Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) ("Cuoco was under medical treatment. Cuoco suggests no basis on which to conclude that Moore or Hershberger should have challenged the responsible doctors' diagnosis. One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason. It was, as a matter of law, objectively reasonable for Moore and Hershberger not to have done so with respect to Cuoco."); *see also, Hanrahan v. Menon*, No. 9:07-CV-610, 2010 WL 6427650, at *12 (N.D.N.Y. Dec. 15, 2010) ("Defendant McGrail

[(the jail administrator)] cannot be liable under Section 1983 for failure to supervise the prison medical staff, because he lacks the medical training and authority to do so."), report and recommendation adopted, No. 9:07-CV-610 FJS ATB, 2011 WL 1213171 (N.D.N.Y. Mar. 31, 2011), *aff'd sub nom. Hanrahan v. Mennon*, 470 F. App'x 32 (2d Cir. 2012).

For all of the foregoing reasons, Defendants are entitled to summary judgment on the denial-of-medical-care claim.

## CONCLUSION

Defendants' motion for partial summary judgment [#18] is denied as to the sexual abuse claim, but is otherwise granted. Defendants are granted summary judgment as to the retaliation claim, the conditions of confinement claim and the denial-of-medical-care claim. The Clerk of the Court is directed to terminate Wenderlich, Fagan, Chapman, Wilcox, Godfrey, Seyman, Thrall, Kitts, Potter, Sabol, Caporiccio and Brink as parties to this action. The remaining claims are the excessive-force claim against Tillinghast, Harvey and Lamb, the failure-to-intervene claim against Belz and the sexual abuse claim against Tillinghast. The remaining Defendants shall file and serve an answer to the Complaint within fourteen days of the date of this Decision and Order.

SO ORDERED.

Dated: Rochester, New York
        October 5, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge